IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY P. DATTO, Ph.D. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BRIAN HARRISON, et al. | : | NO. 09-2064 |

| | | |
|---|---|---|
| JEFFREY P. DATTO, Ph.D. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THOMAS JEFFERSON | : | |
| UNIVERSITY, et al. | : | NO. 09-2549 |

MEMORANDUM

McLaughlin, J.                                    November 22, 2011

          The two above-captioned matters arise from the
plaintiff's dismissal from an M.D./Ph.D. program at Thomas
Jefferson University in May of 2005.  Both suits raised similar
claims.  Dr. Jeffrey Datto alleged that the defendants
(hereinafter "defendant" or "Thomas Jefferson University")
engaged in discrimination, retaliation, and breach of contract
during and following his dismissal from the program.  The
defendant contends that the plaintiff was dismissed on the basis
of his poor academic performance.

          On June 2, 2010, Dr. Datto and the defendant entered
into a settlement agreement.  As part of this settlement
agreement, Dr. Datto signed a stipulation dismissing these two
cases pursuant to Federal Rule of Civil Procedure 41(a) (Docket

No. 68).[1]  Dr. Datto has moved to vacate the judgements entered

and reopen both cases.  Datto Ltr. Nov. 30, 2010 (Docket No. 71).

Dr. Datto claims that at the time of the settlement agreement, he

was suffering from a severe and untreated depression that

diminished his capacity to contract.  Id.  Dr. Datto claims that

his limited financial and legal resources, as well as his

inability to discuss the settlement with his psychiatric experts,

put him in a position of weakness where he was unable to go on

with the litigation.  Datto Ltr. Apr. 29, 2011 (Docket No. 83).

He claims that he was unable to understand the binding nature of

the settlement agreement because of his impaired state, which was

caused by his illness, the defendant's actions, and the Court's

actions.  He also claims that he was unduly influenced by

Magistrate Judge Elizabeth T. Hey to sign the settlement

agreement.  Reply in Supp. of Pl.'s Mot. to Vacate Dismissal

Order ("Pl. Reply") 6 (Docket No. 86).

        The Court has conducted a thorough review of the

record, including: (1) Dr. Datto's original letter request to

reopen these cases dated November 30, 2010, (2) Dr. Datto's

letter of April 29, 2011, (3) Dr. Datto's Reply in Support of

Plaintiff's Motion to Vacate Dismissal Order, (4) evidence

presented at an evidentiary hearing held on September 9, 2011

---

[1] In this Memorandum, docket numbers referenced are to the
case captioned 09-2549.

(Tr. at Docket No. 92), and (5) Dr. Datto's letters of September 13, 2011, September 29, 2011, and October 10, 2011.  Although he has had representation during this litigation, the plaintiff is currently a pro se litigant.  Therefore, the Court investigates and considers all possible arguments and evidence on his behalf in addition to the arguments Dr. Datto has presented.

Although the Court sympathizes with Dr. Datto's frustration with his dismissal from Thomas Jefferson University and the termination of these cases, reopening these cases is not merited by the law or facts.  The Court will deny Dr. Datto's motion.

I.   Procedural History of These Cases

In July of 2007, Dr. Datto filed suit, pro se, in the Philadelphia Court of Common Pleas.  After obtaining counsel, Dr. Datto filed a third amended complaint, and, for the first time, included a federal claim alleging a violation of the Americans with Disabilities Act ("ADA").  The defendant timely removed the action to this Court, where it was docketed as Case No. 08-2154 ("Datto I").

The defendant filed a motion in this Court to dismiss Datto I and Dr. Datto moved to amend the complaint for the fourth time to add another federal claim under the Rehabilitation Act. While these motions were pending, Dr. Datto's counsel withdrew and Dr. Datto requested that the case be stayed to allow him to

obtain new counsel.  The Court granted the stay, but Dr. Datto was unable to obtain new counsel.

After Datto I was removed to federal court, Dr. Datto filed two new related suits in state court, Datto II, a medical malpractice action concerning treatment he received while in the M.D./Ph.D. program, and Datto III, a substantively identical action to Datto I challenging his dismissal from the M.D./Ph.D. program.  Dr. Datto filed a motion asking the Court to exercise supplemental jurisdiction over Datto II and III or, in the alternative, remand Datto I.  Dr. Datto was willing to dismiss his federal claim in Datto I and have the action remanded to state court where it could be coordinated with Datto II and Datto III.

The Court granted Dr. Datto's motion to remand on March 3, 2009, allowing him to dismiss his federal claim without prejudice.  Although the Court recognized that Dr. Datto could seek to amend his complaint to re-assert federal claims in state court after remand, it reasoned that this possibility was speculative because Dr. Datto had not stated that he intended to seek to re-plead his federal claims and any amendment would require leave of court.  Once the case was remanded, Dr. Datto moved in state court to again amend his complaint to add federal claims under the ADA, the Rehabilitation Act, and the Fourteenth Amendment to the United States Constitution.  While the motion to

4

amend was pending, the defendant filed a notice of removal.  The
case was docketed as Case No. 09-1873.  Because the defendant had
removed the case before the plaintiff's motion to amend had been
granted, the Court remanded the case <u>sua sponte</u> as prematurely
removed, finding that, until amended, the operative complaint
contained no federal claim allowing removal.

After remand, the state court granted Dr. Datto's
motion to amend in Datto I.  On May 22, 2009, the plaintiff filed
his fourth amended complaint containing federal claims under the
ADA, the Rehabilitation Act, and the Fourteenth Amendment, and
the defendant again filed a notice of removal to this Court,
where it was docketed as Case No. 09-2549.  The defendant removed
Datto III to this Court on May 13, 2009, where it was docketed as
Case No. 09-2064.[2]

The defendant filed motions to dismiss in both Datto I
and Datto III, on May 20, 2009 and June 12, 2009, respectively.
On June 8, 2009, Dr. Datto filed a motion for a preliminary
injunction requesting that the Court order Thomas Jefferson
University to immediately reinstate him as a medical student
(Docket No. 3).  At Dr. Datto's request, which the defendant did
not oppose, the Court consolidated Datto I and Datto III for all

---

[2] Because Datto II involved only state law causes of action,
it has not been removed to this Court.  The plaintiff dismissed
his claims in Datto II pursuant to the same settlement agreement
at issue here.  <u>See</u> Def. Resp. to Mot. of Jeffrey Datto to
"Reopen" the Cases ("Def. Resp."), Ex. A.

purposes and set a briefing schedule on the pending motions.  On September 9, 2009, the Court granted in part and denied in part the defendant's motions to dismiss.  Order Sept. 9, 2009 (Docket No. 13).  Pursuant to a stipulation by the parties, the Court appointed a special master to oversee discovery in Dr. Datto's cases.  Order Oct. 13, 2009 (Docket No. 22).

The Court scheduled an evidentiary hearing on Dr. Datto's motion for preliminary injunction for January 27, 2010.  Order Jan 11, 2010 (Docket No. 27).  Due to scheduling conflicts with both parties, the hearing was cancelled and rescheduled several times.  In February of 2010, Dr. Datto obtained new counsel.  At the parties' request, the Court held a pre-hearing conference on March 2, 2010 to discuss the scope of the preliminary injunction hearing  (Tr. at Docket No. 41).

In his preliminary injunction motion, Dr. Datto sought a Court order that Thomas Jefferson University reinstate him so that he could graduate, a necessary prerequisite for finishing his medical-licensing examinations.  The Court was informed that a number of states required licensing examinations to be taken within a specific time period.  For Dr. Datto, that time period expired in August of 2010.  Mar. 2, 2010 Conf. Tr. 28-32.

Several days after the pre-hearing conference, Dr. Datto's counsel requested permission to withdraw representation, apparently over a dispute regarding Dr. Datto's choice to pursue

his motion for preliminary injunction.  See Kolman E-mail Mar. 4, 2010 attached to Pl. Reply.  The Court held a hearing on March 19, 2010 regarding counsel's request to withdraw.  Mar. 19, 2010 Hr'g (Tr. at Docket No. 47).  Dr. Datto did not object to his counsel's withdrawal.  Id. at 5.

At the March 19, 2010 hearing, Dr. Datto told the Court that he intended to pursue his preliminary injunction motion. The Court set a schedule to accommodate Dr. Datto's request to provide additional information to the Court.  Id. at 10-12.  Also during the March 19 hearing, the parties agreed that settlement discussions in front of Magistrate Judge Hey would be useful. Id. at 29.  The Court referred the cases to Judge Hey for settlement discussions.  Order Mar. 22, 2010  (Docket No. 46).

The parties spoke and met with Judge Hey a number of times over the subsequent months (Docket Nos. 55-58, 60-63, 66-67).  On June 2, 2010, the parties entered into a settlement and stipulation of dismissal and both of Dr. Datto's cases were dismissed on that day (Docket No. 68).  On November 30, 2010, the Court received a letter from Dr. Datto requesting that the Court vacate the dismissal and reopen both cases.

The Court ordered that Dr. Datto's letter be docketed, treated as a motion, and responded to by the defendant.  Order Dec. 1, 2010 (Docket No. 70).  On December 2, 2010, Dr. Datto wrote to the Court stating that he "might be wanting to withdraw"

his request to reopen his cases.  Datto Ltr. Dec. 2, 2010.  On
January 11, 2011, the defendant's counsel, Mr. Flaherty, informed
the Court that he was advised by Dr. Datto that the plaintiff had
signed a stipulation withdrawing his motion to reopen the cases.
Flaherty Ltr. Jan. 11, 2011.  The plaintiff, however, never sent
either the defendant or the Court a signed copy of the
stipulation.  On January 20, 2011, Dr. Datto wrote to Mr.
Flaherty that he did not "want my lawsuit to be over."   Mr.
Flaherty provided this e-mail to the Court.  Datto E-mail Jan.
20, 2011 attached to Flaherty Ltr. Jan. 20, 2011.

        Over the course of the next several months, the Court
spoke with the parties several times while Dr. Datto reconsidered
whether or not he wished to pursue the motion (Docket Nos. 76,
78, and Docket No. 74 in 09-2064).  Ultimately, in April of 2011,
Dr. Datto decided to proceed with his request to reopen the
cases.  The Court referred his motion to Judge Hey for a report
and recommendation.  Order Apr. 27, 2011 (Docket No. 80).
Following a request by Dr. Datto, the Court vacated that
referral.  Order July 25, 2011 (Docket No. 87).  The Court held
an evidentiary hearing on Dr. Datto's motion on September 9,
2011.

## II.  Factual Findings Regarding Settlement

        In the fall of 2009, the parties contemplated settling
these cases.  Specifically, on September 22, 2009, the defendant

sent Dr. Datto a letter outlining a possible settlement agreement which could possibly allow Dr. Datto to be re-admitted to Thomas Jefferson University.  In a letter proposing the agreement, the defendant stated that "the University wants you to succeed in your medical career _if that is possible_."  Flaherty Ltr. Sept. 9, 2009 attached to Pl. Reply.  This proposal required Dr. Datto to agree to a number of conditions, including evaluations, prescribed treatment, and remediation courses.  Thomas Jefferson University would have discretion to design and administer the remediation program and the discretion to decide whether to admit Dr. Datto once all conditions were agreed upon.  Id.  This proposal did not result in a settlement of the cases.

The next settlement discussions occurred before Judge Hey in March of 2010.

A.   Confidentiality During Settlement

One topic of conversation early in the settlement discussions before Judge Hey was the need for the negotiations and any possible agreement to remain confidential.  Testimony from the parties about what was said regarding confidentiality differs.  Dr. Datto testified at the September 9, 2011 hearing that Judge Hey told him that he could not speak about the potential settlement with anyone other than his parents, a tax advisor, and ultimately, a psychiatrist.  Sept. 9, 2011 Hr'g Tr. 9-10, 27.  Judge Hey testified that confidentiality issues were

9

of concern to the defendant.  Id. at 73-74.  Mr. Flaherty does
not recall requesting that Dr. Datto be limited to speaking with
those individuals.  Flaherty Ltr. Sept. 29, 2011.  Although she
did not recall having specifically instructed Dr. Datto that he
could only speak to certain people, Judge Hey testified that Dr.
Datto was told he could not speak about the settlement to his
testifying experts, who were his psychiatrists.  Sept. 9, 2011
Hr'g Tr. 73-74.  In addition, Judge Hey's personal notes of the
negotiations reflect that confidentiality was discussed as early
as April 29, 2010 and possibly earlier.  Judge Hey's notes also
state that on May 18, 2010, both Judge Hey and Mr. Flaherty told
Dr. Datto that it would not be a violation of settlement
confidentiality to speak with a mental health professional, so
long as he or she was not a testifying expert.  Dr. Datto spoke
to a psychiatrist, Dr. Thase, on June 1, 2010.  That conversation
lasted only a few minutes, and according to Dr. Datto, Dr. Thase
advised him not to settle.  Id. at 27-28.

     The Court finds that Dr. Datto was told that he was not
permitted to speak to his treating psychiatrists, who were
testifying experts, regarding the settlement of his cases.  The
Court finds that Dr. Datto believed he could not speak to anyone
other than his parents, a tax advisor, and Dr. Thase about the
settlement.  Based on the testimony at the September 9, 2011
hearing and Judge Hey's notes, the Court finds that this belief

was reasonable.

The Court further finds that Dr. Datto understood that he could request permission from Judge Hey if he wished to speak to anyone else about the settlement.  In an e-mail dated May 19, 2010, Dr. Datto wrote to Dr. Thase, "settlement discussions are strictly confidential, but the court knowing my psychiatric history and upon my request is allowing me to discuss it with a psychiatrist or a counselor [sic]."  Datto E-mail May 19, 2010 attached to Datto Ltr. Sept. 19, 2011.  Dr. Datto had the opportunity during settlement negotiations to consider whether he wished to speak to a psychiatrist before entering into the agreement.  Dr. Datto spoke to Dr. Thase before the final settlement conference.[3]

B.   <u>Readmittance to Thomas Jefferson University</u>

During initial settlement discussions, Dr. Datto sought an agreement that would enable him to finish his medical degree

---

[3] The Court also notes that the parties were engaging in discovery during this time period.  During the deposition of Dr. Goldman, one of Dr. Datto's testifying experts, on May 7, 2010, Dr. Datto asked, "Would it be poor judgment - there's a reason why its emotional, but I can't disclose, or get into it with you. Would it be poor judgment of mine to give up - trying to finish my medical career at Jefferson?"  Dr. Goldman responded first that "I don't indicate that it would be poor judgment to try to get back into Jefferson" and then that "No. Not poor judgment," to give up his pursuit if the University said it did not want to re-admit Dr. Datto.  None of the specifics of the settlement agreement, however, were disclosed to Dr. Goldman.  Rough Draft Goldman Dep. 282-83 attached to Datto Ltr. Sept. 28, 2011.

at Thomas Jefferson University.  It became apparent during early settlement conferences that the parties would be unable to agree to mutually satisfactory terms that would allow Dr. Datto to complete his education at Thomas Jefferson University.  Sept. 9, 2011 Hr'g Tr. 105.  Dr. Datto was unwilling to agree to a settlement that put his return to the school and eventual graduation at the sole discretion of the defendant.  <u>Id.</u> at 37. Thomas Jefferson University was unwilling to agree to a settlement allowing Dr. Datto to return without retaining that discretion.  <u>Id.</u>  Judge Hey testified that Dr. Datto was told early in the settlement discussions that the defendant was unwilling to agree to a settlement that allowed him to return to Thomas Jefferson University.  <u>Id.</u> at 105.

Instead, Judge Hey proposed a new framework in which Dr. Datto would dismiss his claims against the defendant in exchange for a monetary payment.  <u>Id.</u> at 94-95.  On May 12, 2010, Mr. Flaherty sent a draft settlement agreement by e-mail to Dr. Datto and Judge Hey's chambers structured around this proposal. Def. Resp. to Mot. of Jeffrey Datto to "Reopen" the Cases ("Def. Resp."), Ex. D.

This draft agreement was the basis for negotiations between the parties from May 12, 2010 until the settlement agreement was signed on June 2, 2010.  The parties negotiated several changes to the settlement agreement, but did not alter

12

its basic structure.  Dr. Datto requested that the parties change a non-disparagement clause to ensure that he could explain the circumstances of his dismissal from Thomas Jefferson University "[i]n seeking future employment."  Id., Ex. E.  He also requested that the defendant help structure the payments so as to minimize his tax liability.  Id.  Finally, during the June 2, 2010 settlement conference where the parties ultimately signed the agreement, Dr. Datto requested that the timing of payments be changed to allow him to reopen the cases under Local Rule 41 if the defendant did not make the scheduled payments.  This change is reflected in a handwritten alteration to the agreement.  Id., Ex. A at 3.

The draft agreement sent on May 12, 2010 contained a section entitled "No Future Association."  This section stated: "(a) Plaintiff agrees not to ever apply for admission, either full-time or part-time, to any school, division, or program of TJU, including but not limited to Jefferson Medical College and Jefferson College of Graduate Studies . . . . (b) Plaintiff agrees not to ever enter any TJU building, office, facility or other structure . . . . (c) Plaintiff agrees to cease forever all communications with TJU and/or Defendants . . . ."  Id., Ex. D § 8.  This language first proposed on May 12, 2010, was included, unchanged, in the final settlement agreement signed on June 2, 2010.  Id., Ex. A § 8.

During the course of settlement negotiations, Dr. Datto sent a number of e-mails to Mr. Flaherty requesting that the defendant reconsider its decision not to re-admit him.  Some examples include the following:  On May 17, 2010, Dr. Datto wrote "I have been working hard and fighting for this medical degree for over a decade, and wish there was a different alternative then being forever banned from Jefferson and likely the medical profession as well."  Id., Ex. G.  On May 25, 2010, Dr. Datto wrote, "I'm thinking I could be much more productive the next couple of days trying to see if I am employable, knowing that I will never be returning to Jefferson . . . ."  Id., Ex. I.  On May 28, 2010, Dr. Datto sent an e-mail requesting that the defendant reconsider re-admitting him, writing, "Please don't have my medical career end on Wednesday."  Id., Ex. L.  On June 1, Dr. Datto wrote, "I am writing to everyone to plead to Jefferson to not let tomorrow be the darkest day of my life because it will signify the end of my medical career.  I am writing to see if there is any way instead of this latest settlement agreement to instead reinstate me . . . ."  Id., Ex. M.

The Court finds that Dr. Datto understood that by signing the settlement agreement, he would be unable to obtain a medical or professional degree from Thomas Jefferson University. Dr. Datto now contends that he did not understand that this would

14

be the result of the settlement.  Sept. 9, 2011 Hr'g Tr. 12-13.
His e-mails during the course of settlement negotiations,
however, demonstrate that he understood that a settlement
agreement would end his association with Thomas Jefferson
University, including his ability to obtain a degree there.

     C.    <u>The Finality of the Agreement</u>

     Judge Hey testified that Dr. Datto expressed
ambivalence during settlement negotiations about settling his
cases.  Sept. 9, 2011 Hr'g Tr. 106-07.  Contemporaneous documents
also demonstrate this ambivalence.  For example, on May 25, 2010,
Dr. Datto sent an e-mail to Mr. Flaherty and Judge Hey's chambers
stating that he "would like to enter the settlement agreement
with the ability to revoke the agreement" a week later.  Def.
Resp., Ex. I.

     Judge Hey testified that the settlement discussion
process was structured so that Dr. Datto would have time to
reflect on any agreement.  Because of Dr. Datto's ambivalence,
however, it was important to Judge Hey to have an end point to
the discussions so that the process would not go on indefinitely.
Sept. 9, 2011 Hr'g Tr. 106-07.  Dr. Datto requested, and was
granted, extensions and postponements to make a final decision on
whether to settle or not.  <u>Id.</u> at 106-07, 114.

     On the day he signed the settlement agreement, Dr.
Datto was noticeably upset.  <u>Id.</u> at 107.  He testified that he

was cursing, although neither Judge Hey nor Mr. Flaherty remember the specific words he used.  Id. at 31, 75, 92.  Judge Hey testified that based on participation in numerous settlement discussions, "often parties are very ambivalent about" settlement.  Id. at 107.  Although she recognized that Dr. Datto was upset, Judge Hey testified that based on her observation she "still thought that it was his choice" to enter into the agreement.  Id.  She "offered to take a break.  We considered canceling the -- the settlement, and you know, I was -- was careful to say, without, you know, any prejudice, that we could simply cancel the settlement conference at that time, because he was upset.  He chose to continue with the settlement discussions and to enter the settlement."  Id. at 75.

At the conclusion of the conference, Judge Hey asked the parties, on the record, whether they wished to settle.  Judge Hey asked, "Dr. Datto, did you have a opportunity to review the agreement, and did you make the decision to enter the agreement intending to be bound?"  He responded, "Yes, Your Honor."  Def. Resp., Ex. Q.

On June 23, 2010, Dr. Datto wrote to this Court to "see if it was possible to talk . . . about the dismissal of my case" Def. Resp., Ex. S.  On July 9, 2010, Dr. Datto e-mailed Mr. Flaherty to say that he was considering trying to reopen the cases.

Dr. Datto now argues that he was unable to appreciate the binding nature of the settlement agreement.  In addition to his own testimony of his mental state, Dr. Datto submitted a letter from Dr. Thase, a Professor of Psychiatry at the University of Pennsylvania.  Thase Ltr. Nov. 24, 2010 attached to Datto Ltr. Nov 30, 2010.  Dr. Thase spoke with Dr. Datto on June 1, 2010, met with him three times after the settlement was signed, and has been in contact with Dr. Datto by phone and e-mail.  Id. at 1.  Dr. Thase concluded, "on the basis of [Dr. Datto's] description of the events that occurred on the day of signing the settlement agreement and the severity of the depression that has followed, that he was in the midst of an episode of bipolar disorder and had diminished capacity to understand the binding nature of the settlement agreement."  Id. at 2.

The Court finds that Dr. Datto understood that the agreement he entered into on June 2, 2010 was a final resolution of his cases.  Dr. Datto's e-mails at the time of settlement demonstrate that he recognized that the settlement would conclude his cases and his claims against Thomas Jefferson University. His behavior on the day of the settlement, including his demonstrated frustration with entering the agreement, his initiation of alterations to the agreement on June 2, and his response to Judge Hey's question, show that he realized that he

17

would be bound by the agreement, and no further changes could be made to the agreement once signed.  His behavior shortly after the settlement agreement was signed, including writing to this Court about the dismissal and to Mr. Flaherty to consider reopening the cases show that he knew the cases were closed.

The Court does not lightly disagree with Dr. Thase. Dr. Thase's conclusions, however, rely on Dr. Datto's reports of the events of June 2, 2010.  The Court, in contrast, has considered the testimony of others present on that day, Dr. Datto's e-mails and communications leading up to June 2, and arguments by both parties.

D.   Other Claims

Dr. Datto claims that he felt pressured to sign the settlement because Judge Hey told him it was fair.  Datto Ltr. Apr. 29, 2011 at 2.

The Court finds that Judge Hey told Dr. Datto that she believed the settlement was fair.  No evidence disputes Dr. Datto's testimony.  The Court also finds that Judge Hey told Dr. Datto that it was his choice to enter the agreement.  She testified that "I made it very clear that settlement was voluntary, and that it was mutual.  It was only if the parties both wanted to -- to enter it.  I made clear that my role was a mediating role.  It was not any kind of an adjudicatory role, and that either party, at any time, without any prejudice to their

18

case, could simply say, I don't want to settle.  And -- and that would be fine, and we could all walk away.  And that was reiterated at various times throughout these discussions."  Sept. 9, 2011 Hr'g Tr. 76.

Dr. Datto also claims that this Court influenced him to settle by not holding a preliminary injunction hearing before addressing the defendant's motion to dismiss and by failing to appoint Dr. Datto counsel.  Id. at 20-22.  The procedural history of Dr. Datto's preliminary injunction hearing is described above. The Court was unable to appoint counsel for Dr. Datto because no mechanism existed for doing so and because at several points during this litigation, including while pursuing his preliminary injunction, Dr. Datto was represented by counsel.

Dr. Datto also claims that he was under stress and pressure because the defendant refused to disclose documents he requested and to allow witnesses to answer questions during depositions.  Discovery in these cases was conducted under the supervision of a court-appointed special discovery master, Eleanor Illoway.  Depositions were taken at Ms. Illoway's offices, and she was consulted when disputes arose.  Id. at 17. In addition, these discovery disputes were not raised before Judge Hey when the settlement agreement was signed.  Id.

19

III. <u>Analysis</u>

Rule 60(b) of the Federal Rules of Civil Procedure governs a court's ability to reopen a case in which a final judgment has been entered.  The rule lists six circumstances where relief may be granted:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Motions under (1), (2), and (3) must be brought within one year of the entry of judgment.  Motions under the other subsections must be brought "within a reasonable time." Fed. R. Civ. P. 60(c)(1).

Dr. Datto bases his motion to vacate the judgments in these cases primarily upon his inability to understand the nature of the settlement because of mental impairment at the time of signing the settlement agreement.  This does not fall into one of the first five categories under Rule 60(b), and will be treated by the Court as a claim under Rule 60(b)(6).  The Court also considers whether Dr. Datto has made a claim under Rule 60(b)(3), fraud or misrepresentation by the opposing counsel, because Dr. Datto contends that the defendant led him to believe that Thomas

Jefferson University desired his readmission to its medical school.

A.     Rule 60(b)(6)

The purpose of Rule 60 is to "strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." Boughner v. Sec. of Health, Educ. & Welfare, 572 F.2d 976, 977 (3d Cir. 1978).  Because Rule 60(b)(6) allows a court to undo a final judgment upon which the parties have relied, it "provides for extraordinary relief." Coltec Indus. v. Hobgood, 280 F.3d 262, 273 (3d Cir. 2002).  The Court of Appeals for the Third Circuit instructs that motions under Rule 60(b)(6) should be granted only where the party seeking relief demonstrates "extraordinary" or "exceptional circumstances." Budget Blinds, Inc. v. White, 536 F.3d 244, 255 (3d Cir. 2008); Boughner, 572 F.2d at 977.

A number of factors guide a court's determination of whether extraordinary circumstances exist to merit reopening a case.  Most importantly, the Court of Appeals instructs that "extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices." Budget Blinds, 536 F.3d at 255.  In addition, courts should consider the factors listed by the Court of Appeals in Lasky v. Continental Products:

[1.] the general desirability that a final judgment should

21

not be lightly disturbed; [2.] the procedure provided by
Rule 60(b) is not a substitute for an appeal; [3.] the Rule
should be liberally construed for the purpose of doing
substantial justice; [4.] whether . . . the motion is made
within a reasonable time; [5.] whether there are any
intervening equities which make it inequitable to grant
relief; [6.] any other factor that is relevant to the
justice of the order under attack. . . . [and 7.] if relief
is sought from . . . a judgment of dismissal where there has
been no consideration of the merits, . . . whether there is
merit in the defense or claim . . . .

Lasky v. Continental Prods. Corp., 804 F.2d 250, 256 & n.10 (3d

Cir. 1986) (internal alterations omitted).

        The first factor favors a finding that no extraordinary

circumstances existed.  The parties entered into the settlement

agreement after litigating a number of motions and conducting

fact and expert discovery.  Both parties had an interest in

settling these cases without expending additional resources.  The

second factor cautions against the use of Rule 60 as a vehicle

for an appeal.  Dr. Datto's motion does not relate to the merits

of his cases, so this factor does not weigh in either direction.

As to the fourth factor, the motion was brought within a year of

the dismissal, a "reasonable time."  Dr. Datto, however,

contemplated withdrawing his request to reopen his cases,

extending the time in which the judgments were subject to

uncertainty while this motion was litigated.  Therefore, the

fourth factor does not weigh in either direction.  The fifth

factor does not favor a finding either way, as no new facts or

law have arisen affecting these cases since the date dismissal

was entered.  The third and sixth factors relate generally to avoiding injustice if the judgments were to stand.  The Court considers these factors relevant to Dr. Datto's allegations of mental impairment and undue pressure when he entered into the settlement agreement.

The Court of Appeals has considered a motion pursuant to Rule 60(b)(6) on the grounds of mental incapacity only in a non-precedential opinion.[4]  Other district courts, however, have addressed plaintiffs' motions to vacate judgements on the grounds of mental incapacity at the time of entering into a settlement agreement.  For example, in Pines v. Bruhn, the plaintiff requested that the court set aside a settlement agreement he entered into one month earlier on the grounds that he was mentally incompetent and under duress when he made the agreement. Pines v. Bruhn, No. 98-4263, 1999 U.S. Dist. LEXIS 4020 (E.D.N.Y. Mar. 29, 1999).  The court considered the plaintiff's behavior on the day of the settlement, including his ability to concentrate and his awareness of what was occurring.  The court also

_____

[4] In DeMatthews, the Court of Appeals upheld a district court's denial of a plaintiff's Rule 60(b)(6) motion based on mental incompetence.  The plaintiff claimed that at the time of settlement, he was under the influence of multiple medications and pressure to settle his case.  The settlement was entered into at a settlement hearing before a magistrate judge.  The Court found that because the magistrate judge was able to "assess [the plaintiff's] responsiveness, demeanor, and ability to comprehend the terms of the settlement," the decision to deny the motion was upheld.  DeMatthews v. Hartford Insur. Co., 402 F. App'x 686, 689 (3d Cir. 2010).

considered a letter from the plaintiff's treating physician regarding the possible effect of the plaintiff's medications. The court denied the motion because the plaintiff "produced no evidence to demonstrate that he was in any way mentally incompetent on the day he agreed to settle." Id. at *2-*4.  In McKenna v. Ward, a plaintiff sought to reopen her case four years after the parties agreed to settle.  McKenna v. Ward, No. 88-513, 1997 U.S. Dist. LEXIS 1690 (S.D.N.Y. Feb. 18, 1997).  The court found the plaintiff's claims of mental incompetence unconvincing. In that case, notably, the settlement agreement was executed at the office of the plaintiff's psychiatrist, and both the plaintiff and her psychiatrist stated on the record that she was competent to understand the terms of the agreement.  Id. at *18-*19.

The Court begins with the evidence of Dr. Datto's behavior on the day that the parties agreed to settle.  Judge Hey had spoken to and met with Dr. Datto several times before June 2, 2010.  On June 2, 2010, she had the opportunity to observe his behavior and demeanor.  Although aware that he was upset, Judge Hey concluded that Dr. Datto was still able, and should be given the opportunity, to make a decision regarding settlement.  Dr. Datto's amendments to the agreement to ensure that the defendant paid him, made on the day of settlement, also show that he understood what was occurring.  In addition, Judge Hey offered

24

Dr. Datto the opportunity to discontinue the settlement discussions that day.  Dr. Datto chose to sign the agreement.

Dr. Datto's communications with the defendant leading up to the signing of the settlement also show that he understood the terms of the agreement.  His changes to the non-disparagement clause, interest in the taxation of the payments, and frustration with the defendant's stance on his re-admittance show that he understood the consequences of a settlement agreement.  In addition, his alterations to the agreement on the day of signing show his competence to negotiate important changes to the agreement, further demonstrating his competence to enter into it.

Dr. Datto contends that the defendant's statement that "the University wants you to succeed in your medical career _if that is possible_" led him to believe that the defendant wanted his re-admission, and it was only on this basis that he engaged in settlement negotiations.  During settlement negotiations, however, it became clear to all involved that the parties could not agree to a settlement that allowed Dr. Datto to return to Thomas Jefferson University.  The structure of a possible settlement centered upon a financial payment rather than Dr. Datto's reentry to the school.  A draft settlement agreement sent to Dr. Datto and Judge Hey on May 12, 2010 unambiguously foreclosed future association between Dr. Datto and Thomas Jefferson University.  This draft agreement was the foundation

25

for the parties' negotiations for several weeks and did not change in structure from the time it was first circulated until it was signed on June 2, 2010.  Dr. Datto's e-mails during the settlement negotiations show an understanding that the settlement would prevent him from further association with Thomas Jefferson University.

The Court cannot conclude, based on an early proposal by the defendant which was abandoned before the bulk of the settlement discussions, that the defendant attempted to mislead Dr. Datto.

Dr. Datto contends that both this Court and Judge Hey applied pressure that contributed to his sense that he could not avoid settlement.  Judge Hey offered her opinion to Dr. Datto about the settlement, but she made clear that her role was a mediator and that the choice to settle was his own.  Evidence does not suggest that she applied any undue influence.  As to this Court's decisions regarding Dr. Datto's motion for preliminary injunction, the Court does not find that this placed undue pressure on Dr. Datto.  A hearing on the preliminary injunction motion was delayed because of scheduling conflicts with both parties, including Dr. Datto's retention of new counsel, and then withdrawal of that counsel.  Dr. Datto informed the Court that he wanted to pursue settlement during a conference where the Court set a schedule for deciding his preliminary

injunction motion.  It was his choice to pursue settlement instead of the preliminary injunction.

The Court finds that Dr. Datto was not subject to undue pressure or influence to settle from either the defendant, this Court, or Judge Hey.  The Court recognizes that Dr. Datto felt unable to discuss the settlement agreement with his treating physicians or anyone other than his parents, a tax advisor, and eventually, Dr. Thase.  Dr. Datto was aware, however, that he did not have to enter into any settlement agreement and could continue litigating his cases.  He was able to speak to a psychiatrist, Dr. Thase, and understood that he could request permission from Judge Hey to speak to psychiatrists or counselors.  On these facts, the third and sixth <u>Lasky</u> factors do not weigh towards a finding of extraordinary circumstances that merits reopening these cases.

The seventh <u>Lasky</u> factor is difficult.  Neither party has had an opportunity to address the merits of the cases.[5] Therefore, the Court declines to determine that this factor

---

[5] The defendant notes that a finding in Dr. Datto's favor on this motion would diminish his likelihood of success in his pursuit to be readmitted to Thomas Jefferson University on the merits of his cases.  Def. Resp. 24-25.  The defendant has argued that Dr. Datto was dismissed by Thomas Jefferson University because, in stressful situations, he could not undertake complicated medical analyses and judgments which would affect patients' health.  <u>Id.</u>  The defendant argues that finding that Dr. Datto lacked the capacity to make a decision regarding settlement would also lead to a finding that he lacks the capacity to be awarded a medical degree.  <u>Id.</u>

favors a finding in either direction.

Dr. Datto also claims that he was unable to avoid agreeing to an unsatisfactory settlement proposal because he was "without an attorney, money or a job."  Unfortunately, many litigants must make settlement decisions in the face of financial distress.  Although Dr. Datto did not have representation at the time he entered the settlement agreement, he had the aid and advice of counsel while deciding how to pursue this litigation. This is not an "extraordinary circumstance" that permits the Court to reopen these cases.

Considering the <u>Lasky</u> factors and the fact that Dr. Datto now seeks relief from a judgment that "resulted from [his] deliberate choice[]" to agree to settle these cases, the Court cannot conclude that "extraordinary circumstances" exist that merit reopening these cases under Rule 60(b)(6).  <u>Budget Blinds</u>, 536 F.3d at 255.

B.    <u>Rule 60(b)(3)</u>

For the reasons described above, the Court does not find evidence of "fraud . . . misrepresentation, or misconduct" on the part of the defendant that merits reopening these cases. In 2009, the defendant initially proposed a settlement that could allow Dr. Datto to reenter Thomas Jefferson University.  This proposal never came to fruition.  The Court cannot conclude, based on this proposal, which was abandoned by both parties in

28

favor of the agreement proposed in May of 2010, that the
defendant misrepresented its position to the plaintiff.

An appropriate order shall issue.